**MOORE, Appellee v. TRAVELERS INSURANCE CO., Appellee; FREEMAN et, Admr., Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6381. Decided March 20, 1944.

Mr. David L. Falk, Cincinnati, for Virginia Moore.

Messrs. Harmon, Colston, Goldsmith & Hoadly, Cincinnati, for The Travelers Insurance Co.

Mr. Andrew W. Kops, Cincinnati, for George Freeman, Administrator and Lizzie Freeman.

## OPINION

By MATTHEWS, J.

In her petition the plaintiff stated a cause of action against the defendant insurance company for judgment for $2000.00, as the beneficiary named in a policy upon the life of Robert Freeman.

The defendant insurance company filed an affidavit of interpleader admitting liability on the policy and alleging the administrator of Robert Freeman and one Lizzie Pritchard Freeman, claiming to be Robert Freeman's widow, claimed an interest in the proceeds of the policy without collusion with it, and that it was ignorant of the respective rights of the claimants and that it was ready to pay the amount into court.

An order of interpleader was entered, the insurance company paid the money to the clerk of courts and was dismissed from the action. Robert Freeman's administrator and Lizzie Pritchard Freeman filed answers and cross-petitions.

The plaintiff based her claim to the proceeds upon the terms of the policy naming her as the beneficiary and describing her as the insured's "common law wife." The policy was dated December 1st, 1939 and the insured died on January 20th, 1943.

In order to invalidate the designation of the plaintiff as

beneficiary and to establish their right under the law, the administrator and Lizzie Pritchard Freeman, by amended cross-petitions alleged that:

"And that on March 9, 1938, one Virginia Freeman, plaintiff, herein, did exercise, undue influence on said Robert Freeman and did illegally and fraudulently cohabit with said Robert Freeman and did by means of illegal and fraudulent and undue meretricious relationship and by exercising undue influence over him by reason of such relations and blandishments and by cowing the said Robert Freeman and by other means incident to such illegal and fraudulent criminal relationship did prevail upon the said Robert Freeman to change the beneficiary on said policies and to make the same payable to Virginia Freeman who now claims said policy as Virginia Moore.

*. * *

"That on December ,1, 1939, the said plaintiff Virginia Moore did continue to exercise undue influence as above set forth and did by illegally, fraudulently, cohabiting with Robert Freeman and by the means above set forth did by such undue influence prevail upon the said Robert Freeman to convert the said two certificates of insurance into one for the sum of Two Thousand Dollars ($2000.00) and did, by such means, prevail upon him to make said certificates payable to Virginia Moore. All of which occurred while Robert Freeman was under the undue influence of said Virginia Moore, and while she was practicing said fraud upon him.

"And that thereby the said Virginia Moore did defraud the said Robert Freeman and his estate, and this cross-petitioner.

"That the said certificates of insurance as written did not express the true intent and purpose of the insured, Robert Freeman. And that said policies should be made payable to the estate of Robert Freeman."

Upon invalidation of the provision naming a beneficiary, each claimed the proceeds by operation of law. Lizzie Pritchard Freeman also sought to have a trust imposed.

The trial court sustained demurrers to these cross-petitions and upon proof of the allegations of the plaintiff's peti-

tion, entered judgment in her favor. That is the judgment appealed from.

The question presented to this court is whether the allegations of the amended cross-petitions state a cause of action.

Of course the fact that an unlawful relation existed between the insured and the beneficiary furnishes no basis for the invalidation of the designation. **Pierce v Metropolitan Life Insurance Company, 46 Oh Ap 36.**

It is also clear that while the obligation of the insurer to pay is contractual, any right of the administrator or the widow is non-contractual. Their right, if any, must be based on a tortious act committed by the plaintiff to their damage.

A somewhat similar situation was presented in **Lovelady v Rheinlander, 66 Oh Ap 409,** in which a devisee of real estate sought damages on the ground that the defendant had, through undue influence, caused the testator to sell the real estate in his lifetime for the purpose of causing an ademption of the devise. The claim of the widow in the case before us certainly is not stronger than that of the devisee in that case. At page 411 we said:

"This action falls within the category of tort actions described in 4 Restatement of the Law of Torts, 405, §870:

" 'A person who does any tortious act for the purpose of causing harm to another or to his things or to the pecuniary interests of another is liable to the other for such harm if it results, except where the harm results from an outside force the risk of which is not increased by the defendant's act.'

"Illustrating the application of the principle, at page 407, an example is stated where an heir murdered an ancestor in order to prevent the signing of a will, which the ancestor had prepared but not signed, thereby depriving the plaintiff of a legacy which he would otherwise have received, and, at page 586, an example is stated of a son, who, as an attorney, purposely drew an ineffective will for his mother in order to prevent a favorite nephew from receiving one-half of the estate in accordance with instructions given by the mother."

And, applying the rule to the facts in this case, we said at page 416:

"This is not a case in which it appears that a defendant has frustrated the testamentary intention of a decedent by acquiring an undue influence over him, destroying his capacity to act as a free agent, and maintaining such mastery at all times thereafter to the time of his death, thus precluding the decedent from doing that which he desired."

The necessity for the continuance of the undue influence during the remainder of the insured's life is pointed out in **Jeffords v John Hancock Mutual Life Insurance Co., 19 Abs 701,** where the court, in referring to the language used by it in a former opinion, said:

"We meant to say by that language that the duress under which the change in beneficiary was made was continuing and acted as a potent and controlling force until the death of Mrs. Ford."

See, also: Lewis v Corbin, 195 Mass., 520, 81 N. E., 248.

Assuming that the averments of the amended cross-petitions are sufficient, when liberally construed, to intend to allege that the plaintiff by unlawful means so dominated the will of the insured as to cause him, contrary to his desire and will, to name her as beneficiary, there is no allegation from which an inference could be drawn that such domination continued during the remaining more than two years of his life, in which he could have changed the beneficiary had he so desired. Were there an allegation that the unlawful relationship continued until the insured's death (which there is not) it would not imply continuance of the undue influence. The most that could be inferred would be that the relationship caused the insured to want the plaintiff to be the beneficiary. It would not indicate that he allowed her designation to stand against his will and desire.

For these reasons, the judgment is affirmed.

ROSS, P. J., and HILDEBRANT, J., concur.